IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2014

## RODNEY BRADEN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 11-03210     Honorable James M. Lammey, Judge**

_____

**No. W2013-02767-CCA-R3-PC  - Filed December 9, 2014**

_____

The Petitioner, Rodney Braden, appeals the post-conviction court's denial of relief from his conviction for second degree murder.  On appeal, the Petitioner argues that he received ineffective assistance of counsel in connection with his guilty plea.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

R. Todd Mosley, Memphis, Tennessee, for the Petitioner, Rodney Braden.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Bryce Phillips, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

This appeal stems from the shooting death of the victim, Marcello Carter, on January 15, 2011.  The Petitioner was subsequently indicted for first degree murder in relation to this incident.  On March 26, 2012, the Petitioner entered a guilty plea to second degree murder and, pursuant to the negotiated plea, received a sentence of 15 years' confinement.

At the March 26, 2012 guilty plea hearing, the State summarized the underlying facts as follows:

> [O]n January 15, 2011, . . . . [the police] found [the victim] sitting
> behind the steering wheel of a Blazer that had run into a chain-link fence down

a ditch on Marjorie just north of Rosewood. [The victim] was dead of a gunshot wound.

A subsequent autopsy determined that [the victim] died of a gunshot wound to the torso.

[B]efore this shooting, the [Petitioner] . . . had been at [the victim]'s house. [The victim] believed that [the Petitioner] had stolen some items from [the victim]'s coin collection. Instead of reporting the matter to the police, [the victim] took matters in his own hands[,] and he and some associates beat [the Petitioner] with a baseball bat.

[The Petitioner], in an attempt to get revenge for this act of disrespect, armed himself with a revolver and waited until [the victim] pulled out of the driveway on Marjorie just north of Rosewood in this Blazer. Additionally there was a Stacy Hinton and a Joshua Pete in that place, at which time [the Petitioner] opened fire on the Blazer[,] firing several shots, one of them striking [the victim] and killing him.

After the killing, [the Petitioner] went to a hotel – a [B]udget [L]odge on Brooks Road[,] and while there, he admitted to one Antione Fox, Amanda Anderson, and [] Carnell Booker that he had committed this shooting – this killing. Additionally, in an attempt to hide proof of the crime, [the Petitioner] burned his clothes in a barbeque grill at 1305 Lehr . . . . [a]nd also bleached his hands in an attempt to rid himself of any evidence.

Witnesses identified [the Petitioner] in a six-person photographic lineup as the person who shot [the victim].

Defense counsel, on behalf of the Petitioner, stipulated "that this is a sufficient factual basis for the plea" and asked the court to accept the negotiated plea. The trial court reviewed the Petitioner's petition for waiver of trial by jury and informed the Petitioner that he had "an absolute right to plead not guilty in this case and demand a jury trial." The court explained to the Petitioner his rights and what rights he would be giving up by entering a plea of guilty. The Petitioner informed the court that he had previously entered a guilty plea for a felony offense and indicated that he understood his rights and what rights he would be giving up. The court and Petitioner then engaged in the following colloquy:

COURT:             Okay.  Is it your wish . . . to waive all these rights away and accept the [S]tate's offer of fifteen years and enter this guilty plea.  Is that what you want to do?

PETITIONER:        Yes, sir.

COURT:             Are you doing this freely and voluntarily?

PETITIONER:        Yes, sir.

COURT:             Do you have any questions about what you are doing?

PETITIONER:        No, sir.

COURT:             Has [counsel] done the things that you've asked him to do, and is he representing you to your satisfaction?

PETITIONER:        He did everything.  I'm ready to plead.

COURT:             Okay.  Is there anything else you would like to add before I pronounce sentence, [Petitioner]?

PETITIONER:        There's nothing at all.

COURT:             All right.  And, again, are you doing this of your own free will?

PETITIONER:        Yes, sir.

After the hearing and upon finding that the Petitioner's guilty plea was knowing and voluntary, the trial court accepted the Petitioner's guilty plea.  Pursuant to the negotiated plea agreement, the trial court imposed a sentence of 15 years' confinement.  On April 2, 2013, the Petitioner filed a timely pro se petition for post-conviction relief, alleging ineffective assistance of counsel.  The Petitioner was subsequently appointed appellate counsel, but no amended petition was filed on his behalf.

At the November 26, 2013 evidentiary hearing, the Petitioner testified that counsel was appointed to represent him in June 2011.  Prior to pleading guilty, the Petitioner met with counsel three times outside of court to discuss his case.  He also met with counsel on the day of his guilty plea hearing.  During these meetings, the Petitioner and counsel discussed the

Petitioner's charge and the potential sentences that the Petitioner faced. The Petitioner gave counsel the names of several family members who he maintained would have testified that he was at his aunt's house at the time of the shooting. The Petitioner did not write to or contact these potential alibi witnesses and did not know whether counsel attempted to contact them. The Petitioner acknowledged that the State had three witnesses willing to testify that the Petitioner confessed to the murder.

The Petitioner testified that he felt "manipulated" and "forced" into accepting the plea agreement because counsel told him it was in his "best interest." Counsel explained to the Petitioner that he "could be facing life [imprisonment]" for first degree murder and that he would not "get [another] offer like this." The Petitioner claimed that he was not "really aware of what was going on" in his case because counsel did not meet with him enough and did not "sit down and go over the case" with him. The Petitioner did not express his concerns to counsel or ask counsel why the plea agreement was in his best interest because he "put[] all [his] trust in [counsel]." The Petitioner changed his mind about pleading guilty because he felt like he would have a "better chance with twelve people having their say so about the situation." When asked what had changed since he pleaded guilty, the Petitioner responded, "[R]eally, getting a clear mind on what went on during the whole situation." He acknowledged that counsel told him he was prepared for trial and agreed that the possibility of a life sentence influenced his decision to plead guilty.

On cross-examination, the Petitioner acknowledged that he received the lowest possible sentence for second degree murder without being designated especially mitigated. He also acknowledged that as part of the plea agreement, the State agreed not to seek any consecutive time if he were convicted of the separate robbery charge pending against him at the same time. He agreed that the trial court reviewed his rights during the guilty plea hearing and that he told the court that counsel "did everything" he wanted him to do.

The trial court also voir dired the Petitioner about his guilty plea hearing testimony. The Petitioner acknowledged that he told the court that he wanted to plead guilty and was satisfied with counsel's representation. He explained, "I wasn't lying to [the court] then, Your Honor. I was just pleading guilty for what [counsel] was saying. I was being misl[ed], Your Honor. I wasn't shown the right way."

Counsel testified that he met with the Petitioner several times prior to the Petitioner's guilty plea hearing and hired an investigator to work on the Petitioner's case. Counsel estimated that he worked approximately 64 hours outside of court and 11 hours in court in connection with the Petitioner's case. Counsel recalled that he discussed alibi witnesses with the Petitioner in relation to his robbery charge, which was unrelated to the murder charge. Counsel testified that he did not force the Petitioner to plead guilty and had no reservations

about going to trial in the Petitioner's case; however, he explained, "[S]ometimes it's not, in my opinion, in my client's best interest" to go to trial. He believed that the Petitioner received an "excellent outcome" in his case given the seriousness of the offenses.

On cross-examination, counsel agreed that the State had some "issues" that weakened their case against the Petitioner. He believed that the State's witnesses would have credibility issues because they were co-defendants with the Petitioner in another felony case. Counsel denied that he told the Petitioner that it was in his best interest to plead guilty and explained,

> I have pretty much a set routine that I follow in all of my cases, and it starts with finding out what happened from a factual point of view. Once you get all the information that is available to you in terms of witnesses – in terms of physical evidence and everything else that goes into these cases, you discuss those facts with your client; you tell your client what his options are; and the client has to make the call. You know, I do – as I always say, "I'm going to do what you tell me to do; but I will tell you what my opinion is – I will voice my opinion."
>
> . . .
>
> I don't deviate from [that routine] very often. I can't think of any instances where I would. And I don't think I did in this case even though I don't remember specifically.

Following the hearing, the post-conviction court set out its oral findings and denied the Petitioner relief. The court accredited the testimony of counsel over that of the Petitioner and found that counsel adequately met with the Petitioner prior to the guilty plea hearing, thoroughly investigated the Petitioner's case, and "did a heck of a job" in getting the Petitioner a plea agreement with 15 years' confinement. The court emphasized the inconsistences in the Petitioner's testimony at the guilty plea hearing and the post-conviction hearing and rejected the Petitioner's claims that counsel failed to investigate his alibi defense. The court concluded that the Petitioner failed to establish that counsel's performance was deficient or that the Petitioner was prejudiced as a result therefrom. On November 26, 2013, the court entered a written order incorporating its oral findings and conclusions and denying the Petitioner relief.

It is from this order that the Petitioner timely appeals.

## ANALYSIS

On appeal, the Petitioner argues that counsel rendered ineffective assistance of counsel by failing to adequately meet with him and advise him of the consequences of entering a guilty plea. The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish that he received ineffective assistance of counsel. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that the conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In the present case, the Petitioner complains that counsel failed to adequately meet with him prior to his guilty plea hearing and failed to properly advise him about the consequences of his guilty plea. In denying relief, the post-conviction court discredited the testimony of the Petitioner and found "no errors in what [counsel] has done." Rather, the court found that counsel met with the Petitioner several times before his guilty plea hearing, investigated the Petitioner's case, and properly advised the Petitioner regarding possible sentences and the guilty plea agreement. The court reasoned that the Petitioner's guilty plea

hearing testimony "is proof positive that [the Petitioner] was ready to enter a guilty plea" and that he was satisfied with counsel's representation. Based on the proof presented, the court found that counsel "did a heck of a job" in negotiating a plea agreement with such favorable terms and that there was no evidence in the record to support the Petitioner's assertion that he would have proceeded to trial but for the alleged errors by counsel. Accordingly, the court concluded that the Petitioner failed to establish by clear and convincing evidence that counsel provided ineffective assistance of counsel.

The record does not preponderate against the post-conviction court's findings and supports its conclusion that counsel did not render ineffective assistance of counsel. The testimony of both counsel and the Petitioner confirms that counsel met with the Petitioner on multiple occasions prior to his guilty plea hearing and discussed with the Petitioner the charges against him, possible sentences he would face if convicted, and terms of the guilty plea agreement. During the guilty plea hearing, the trial court thoroughly explained to the Petitioner his rights and the rights he would be waiving by pleading guilty. The Petitioner assured the court that he understood his rights and was entering a guilty plea freely and voluntarily. The Petitioner never informed counsel or the trial court that he was dissatisfied with counsel's representation. Rather, the Petitioner told the trial court that counsel "did everything" the Petitioner asked, and he was "ready to plead." See Blackledge v. Allison, 431 U.S. 63, 74 (1977) (noting that a defendant's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity"). Nothing in the record dispels the reliability of the Petitioner's testimony at the guilty plea hearing. Beyond his own testimony, which was discredited by the post-conviction court, the Petitioner put forth no evidence to establish deficient performance by counsel. Thus, we agree with the post-conviction court that the Petitioner failed to establish that counsel provided ineffective assistance of counsel. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE